# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:06CV462-C

| | |
|---|---|
| **DENNIS CROSBY** on behalf of himself and all others similarly situated, **JACKIE STEVEN POSTELL**, and **DANNY RAY COCHRAN**, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF GASTONIA**, a municipality existing under the laws of the State of North Carolina, <br><br> Defendant. | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. "Plaintiffs' Petition for Class Certification" (document #14) filed March 27, 2007;

2. "Plaintiffs' Petition for Appointment of Class Counsel" (document #15) filed March 27, 2007;

3. Defendant's ". . . Response to the Plaintiffs' Petition for Class Certification" (document #20) filed April 30, 2007;

4. Defendant's ". . . Response to the Plaintiffs' Petition for Appointment of Class Counsel" (document #21) filed April 30, 2007;

5. "Plaintiffs' []Reply to Defendant's Response to Plaintiffs' Petition for Class Certification" (document #24) filed May 29, 2007;

6. Defendant's ". . . Sur-Reply Concerning Plaintiffs' Petition for Class Certification" (document #51) filed December 17, 2007;

7. "Plaintiffs' Motion for Discovery Scheduling Conference with the Magistrate" (document #38) filed October 29, 2007;

8. "Plaintiffs' Motion For Leave To Amend Complaint" and ". . . Memorandum in Support . . ." (document ##39-40) filed October 29, 2007;

9. Defendant's ". . . Response to Plaintiffs' Motion for Leave to Amend Complaint" (document #47) filed November 29, 2007;

10. "Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Petition for Class Certification or in the Alternative, in Support of Leave to Amend Complaint to Add Additional Plaintiffs" (document #46) filed November 29, 2007; and

11. Defendant's ". . . Response to Plaintiffs' Supplemental Memorandum" (document #52) filed December 17, 2007.

On November 19, 2007, these matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Plaintiffs' Petitions and Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiffs' Motion for Leave to Amend Complaint as moot, will respectfully recommend that the Plaintiffs' Petition for Class Certification be <u>granted</u>, and will extend the deadlines in the Case Management Order, as discussed below.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This proposed class action alleges a violation of 42 U.S.C. § 1983, the United States and North Carolina Constitutions, and a breach of contract and fiduciary duty in relation to the termination of a supplemental pension fund (the "Fund") for Gastonia, North Carolina police

2

officers. The named Plaintiffs seek a permanent injunction preventing the Defendant City from eliminating or decreasing vested pension benefits, and an award of past due benefits and attorney's fees. Through the subject Petitions and Motions, the Plaintiffs,[1] and specifically proposed class representative Dennis Crosby, seek either class certification to include other retired police officers impacted by the Fund's termination, or to amend their Complaint to add each of the approximately fifty-nine affected retired police officers.[2] The Defendant opposes class certification, and argues that Plaintiffs' Motion For Leave To Amend is moot in light of the filing of a second lawsuit on December 5, 2007, by several of the proposed additional plaintiffs.

The Fund was created in 1955 by the North Carolina General Assembly through legislation proposed by the Gastonia City Council, and was financed for many years, inter alia, through fines levied against defendants convicted in municipal court. Due to the Fund's financial difficulties in the 1990s, police officers voted to contribute 2% of their salaries to keep the Fund operational. In 2002, the Fund's trustees sponsored a referendum which gave Gastonia police officers the choice of increasing their salary contributions to 7% or terminating the Fund. The officers chose to terminate the Fund and thereafter the Gastonia City Council adopted a resolution requesting terminating legislation from the General Assembly. The General Assembly did enact such legislation in October of 2002, which provided that (1) no officers joining the police department on or after October 1, 2002 would be eligible for Fund benefits, (2) officer salary contributions to the Fund would cease immediately, and (3) the Fund would refund all contributions which it still held

---

[1] Plaintiff Dennis Crosby is a retired police officer who served on several Police Department hiring boards. Plaintiff Jackie Steven Postell is a retired police officer who served as Chief of Police, and in that capacity was a Fund Trustee. Plaintiff Danny Ray Cochran is a retired police officer who served as Assistant Police Chief/Commander of Operations, and in that capacity was also a Fund Trustee.

[2] Although the Defendant was initially correct that the Plaintiffs' Petition for Class Certification should be denied because it "relies purely upon conclusory allegations," there has been extensive briefing of the class certification issue in the eight months since the Petition was originally filed.

3

of current or former officers. See Session Law 2002-130. The Fund continued to pay benefits to eligible officers until the Fall of 2005 when its funds were depleted.

The Defendant argues that the legislation which created the Fund did not make it responsible for guaranteeing the Fund or its benefits, and thus that each potential class member's claim will depend upon whether the Defendant made an individual offer or promise of benefits as a term or condition of his or her employment. This individualized evaluation of each claim, the Defendant urges, counsels against certification of the proposed class.

Although the parties differ as to their legal import, the basic facts are not in dispute. The 1955 legislation provided that the Fund was to be administered by a Board of Trustees composed of the Chief of the Police Department, the Assistant Chief of the Police Department, and the City of Gastonia's Accountant. See Chapter 946 of 1955 Session Laws § 1.[3] The Accountant, as a member of the Board of Trustees, was directed to pay the Fund's beneficiaries each month. See Chapter 946 of 1955 Session Laws § 4. Details which were not prescribed by the Fund's legislation were left to the discretion of the Trustees. And although the legislation did not have provisions requiring the Defendant City to finance the Fund, the parties agree that through the years it did make significant contributions.

The legislation also prescribed the eligibility requirements for an officer to receive the retirement benefits – which, although the exact requirements changed over the years, generally required the officers to have worked for the Defendant for a certain number of years and have

---

[3]Later amendments to the legislation changed the Assistant Chief of Police to the Police Department's Commander of Operations, and also substituted the Defendant's Finance Officer for its Accountant.

4

attained a certain age.[4]  In addition, the Fund's legislation provides that:

> Any member of the board of trustees of the "Supplementary Pension Fund" or any full-time paid member of said police department who retires or is retired under the provisions of this Act shall receive monthly for the remainder of his life from the "Supplementary Pension Fund" <u>so long as funds are available</u> an amount equal to two percent for each five years of service, or major portion thereof, not to exceed fourteen percent of his average monthly salary for the three highest salaried years while employed by the City of Gastonia or the Gastonia police department.

Chapter 112 of 1957 Session Laws § 2 (emphasis added).

The Defendant understandably argues that the "so long as funds are available" language assumes that the Fund would terminate when it exhausted its resources – and that it was not required to guarantee funds be paid in the event of such exhaustion. The Plaintiffs counter that as vested beneficiaries they had a property interest in receiving benefits which was unconstitutional to terminate under these circumstances. However, as discussed below, this issue need not be addressed to resolve the subject Petitions and Motions, nor could it be addressed at this early stage of the proceedings.

## II. <u>DISCUSSION</u>

### A. <u>Petition for Class Certification</u>

Certification of a class action under Federal Rule of Civil Procedure 23 is a two-step process. First, an action must satisfy all four requirements mandated by Rule 23(a). <u>Gunnells v. Healthplan Services, Inc.</u>, 348 F.3d 417, 423 (4th Cir. 2003). Second, the action must fit within at least one of the three categories of actions identified in Rule 23(b). <u>Id.</u> In construing Rule 23, the Fourth Circuit has provided the following guidance:

---

[4] There is much argument in the pleadings regarding whether becoming eligible to receive benefits equates to "vesting" in the benefit. However, for the reasons stated in the following section it is unnecessary to address this issue at this early stage of the proceedings or to adequately address the pending Petitions and Motions.

5

> Chief among the justifications for this device is its efficiency: adjudication of a properly-constituted class action generally has res judicata effect and saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion. . . . To ensure this benefit is realized, however, and to protect both the rights of the absent plaintiffs to present claims that are different from those common to the class and the right of the defendant to present facts or raise defenses that are particular to individual class members, district courts must conduct a "rigorous analysis" to ensure compliance with Rule 23, . . . paying careful attention to the requirements of [that] Rule.

Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir. 2006) (internal quotations and citations omitted). "The plaintiffs who propose to represent the class bear the burden of demonstrating that the requirements of Rule 23 are satisfied." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004) (citation omitted).

For class certification to be proper under Rule 23(a), the plaintiffs who propose to represent the class must establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

First, the class must be so numerous that joinder of all members is impracticable. "No specified number is needed to maintain a class action" – rather, "an application of the rule is to be considered in light of the particular circumstances of the case." Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984). Although no specific number is necessary to maintain a class action, class certification has been deemed proper in classes with as few as eighteen members. See Rodger v. Electronic Data Sys. Corp., 160 F.R.D. 532, 535 (E.D.N.C. 1995).

In the present case, in addition to the three named Plaintiffs, there are approximately fifty-

nine other potential class members. Although this is certainly not a large class, joinder of fifty-nine additional plaintiffs would be cumbersome; would place an undue burden on the parties as they proceed through discovery, negotiations, and possibly trial; and would strain the Court's resources and likely defy efficient management. Accordingly, the Court finds that this factor weighs in favor of class certification.

As the Fourth Circuit Court of Appeals has noted, the other Rule 23(a) requirements "'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998) (citation omitted). The "commonality" requirement, which has been liberally construed, "requires little more than the presence of common questions of law and fact." Thorn, 445 F.3d at 319 (citation omitted). Accord Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 146 (4th Cir. 2001). And, "typicality" is understood in an equally plain and straightforward manner, requiring only "that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" Lienhart, 255 F.3d at 146 (citation omitted).

In examining commonality and typicality, it is apparent that the proposed class members have much in common with the class representative. The class would consist of police officers who served and retired from the Defendant's Police Department and, if the Fund were still operational, would be eligible to receive benefits. Each officer would have a similar complaint – that he completed the requirements under the statute only to learn that the benefits would not be paid. Each class member's damages could be precisely computed according to the formula in the governing

7

legislation. In short, there is no question that the class has allegedly suffered from the same injury as that alleged by the class representative.

The most significant issue in this case, however, as the Defendant has amply forecasted, is whether the Defendant is liable for the Fund's continued success or for its failure under the circumstances surrounding the Fund's conception, life, and termination. And, of course, the ultimate resolution of this issue – which the Defendant is confident will be in its favor – will be outcome determinative.

What is currently before the Court, however, is not how the case will ultimately be resolved, but whether resolution will involve common questions of law and fact and present sufficiently typical claims and defenses to warrant class certification, and based on the evidence before the Court at this time this is a question which must be answered in the affirmative. The Defendant City sponsored the legislation which created and governed the Fund. Its employees made up the Board of Trustees and distributed the funds to eligible recipients. It contributed money to the fund on many occasions. It benefitted from the Fund's existence by being able to hire and retain employees with the addition of a supplemental retirement fund over and above what the State was able to provide, and referenced the Fund in recruiting materials such as brochures and on the Internet. And it was the City that ultimately sought and obtained the terminating legislation.

The Defendant argues that the legislation only entitled eligible officers to receive benefits "so long as funds are available," urging that this language is a clear indication that the Fund was not guaranteed to any officer. As noted above, however, the question for class certification is not whether the Defendant will ultimately escape liability, but whether the facts and law relevant and applicable to that determination are sufficiently common, and the claims sufficiently typical, for each proposed class member – and clearly they are.

The Defendant also argues that the Plaintiffs' assertion that certain of the Defendant's employees orally guaranteed these benefits to individual officers should prevent class certification, citing Sprague v. General Motors Corp., 133 F.3d 388, 398 (6th Cir. 1998), for the proposition that class certification is improper where each class member will rely upon unique dealings he had with the Defendant to prove liability. Sprague, however, involved many employees of a major corporation who worked in different plants, were presented and signed different documents pertaining to their retirement, who went to different presentations regarding retirement benefits (or went to no presentation at all), and generally defied characterization as presenting "common" facts or "typical" claims. The Sixth Circuit summarized the diversity of facts and claims in Sprague as follows:

> The premise of the bilateral contract theory was that GM had made an individual "side deal" with each early retiree. Each putative side deal involved any pertinent document the retiree might have signed - and the statements of acceptance, as we have seen, said nothing more about health insurance than that the early retiree accepted the "applicable" benefits - as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both. A retiree might have signed a "long form" statement of acceptance, or a "short form," or a "statement of intent" to retire, or nothing at all. He might have heard GM officials speak about the special early retirement program at a group meeting, or might have seen a program summary compiled by GM, or might have had a one-on-one meeting with his supervisor or with a GM benefits person. He might have retired from a particular plant in a particular division and been given a particular set of representations, or he might have retired from a different plant in a different division and been given a completely different set of representations. Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree.

Id. In contrast, on the liability issue in this case, there is far more likely overlap than diversity in the proof of individual claims, and if liability is established, no difference at all in the formula to be used for calculation of damages.

In short, when considering the alleged oral guarantees with all of the common facts, and the

9

law governing those facts, the "commonality" and "typicality" of the claims in this case become apparent and to the extent efficiency and economy are considered, it would certainly require far fewer resources of the parties and of the Court to litigate these common issues once rather than up to 62 times. Indeed, if the Plaintiffs were to prevail based on the common grounds discussed above, there would be no need for individual officers to attempt to prove that an oral contract was made to guarantee the same benefits, and if some individual proof is ultimately necessary the common law and facts still far outweigh any individual differences. And finally, should individual determinations become too burdensome, the District Court possesses "considerable discretion" in a decision to decertify the class. Gunnells, 348 F.3d at 433 (noting that "if it becomes apparent that individual damage issues will predominate or render the case unmanageable, the court undoubtedly will recognize its responsibility to decertify the class").

The final requirement under Rule 23(a) is that the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." Broussard, 155 F.3d at 338 (citation omitted).

It is clear that all three of the named Plaintiffs possess the same alleged injury as the class members. Plaintiff Dennis Crosby is a retired police officer who served on several Police Department hiring boards. Plaintiff Jackie Steven Postell is a retired police officer who served as Chief of Police, and in that capacity was a Fund Trustee. Plaintiff Danny Ray Cochran is a retired police officer who served as Assistant Police Chief/Commander of Operations, and in that capacity was also a Fund Trustee. The Defendant argues that Plaintiffs Postell and Cochran can not serve as class representative because of their conflict of interest in having served on the Fund's Board of

Trustees – allegedly making them liable for its demise. This argument need not be addressed, however, as they do not seek to serve as the class representative.

It is Plaintiff Crosby who seeks to be named class representative. The Defendant argues that Mr. Crosby also has a conflict of interest, pointing to the minutes of the May 7, 2002 Gastonia City Council meeting (on the issue of proposing Fund termination legislation to the General Assembly) during which Mr. Crosby claimed to have made representations to applicants (while on various hiring boards) that they would be eligible to receive benefits from the Fund. The Defendant argues that Mr. Crosby could be liable to the City for these "misrepresentations," or potentially liable to other class members. Indeed, the Defendant has asserted a counterclaim against Mr. Crosby seeking indemnification if it is found liable based on his alleged oral misrepresentations.

"The crucial question in a case where . . . adequacy of representation is at issue is the impact of a final judgment upon absent class members . . . who . . . must be assured of representation which is of sufficient factual and legal identity with their own claims that principles of due process are not offended." Turner v. A.B. Carter, Inc., 85 F.R.D. 360, 364 n.5 (D.C. Va. 1980). On these facts, it is evident that the class members will be afforded due process with Mr. Crosby as a representative. He has allegedly suffered an identical injury to the proposed class members, and the Court is convinced that he will adequately protect their rights. The potential conflict of interest cited by the Defendant is remote, and as discussed above, may not become an issue in this action in any event. In addition, because this class action is being certified pursuant to Rule 23(b)(3), class members have the additional safeguard of choosing to "opt out" of the class. See Gunnells, 348 F.3d at 456-57 (evaluating potential conflict of interest in light of the fact that class members could choose to opt out of the action).

Having determined that the requirements of Rule 23(a) are satisfied, the Court must next

11

decide whether this action falls within one of the three types of actions identified in Rule 23(b).

Under Rule 23(b), a class action may be maintained if:

    (1)    prosecuting separate actions by or against individual class members would create a risk of:

        (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

        (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

    (2)    the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

    (3)    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

        (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

        (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

        (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1), (2), (3).

In the present case, it is apparent that this case meets the criteria of Rule 23(b)(3). As discussed above, the common questions of law and fact substantially over-shadow any questions affecting only individual members. Allowing class certification will be far more efficient and less consuming of limited judicial resources than requiring a host of individual actions. Furthermore,

resolution of the issues raised herein will not only aid the retired officers, but will likely save the Defendant significant resources (especially if it is found that the Defendant is not liable).

When proceeding with a Rule 23(b)(3) class action, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due to the limited number of potential class members in this action, and the likelihood of their close geographic proximity, it is reasonable to require that each member receive individual notice of this action. Therefore, assuming the Petition For Class Certification is granted, the undersigned respectfully recommends that the class representative be directed to locate and send a notice to all potential class members with the following information: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). In addition, the Defendant should be directed to comply with a request by the Class Representative that it provide the names and addresses of potential class members (retired police officers) within its possession or control.

Rule 23(c)(1)(B) requires the Court to define the class and appoint class counsel. The class is defined as follows: all Fund eligible retired City of Gastonia police officers (believed to be approximately 62 in number).

Finally, Attorney Fred W. DeVore, III and the law firm of DeVore, Acton & Stafford, P.A. have petitioned the Court to be appointed as class counsel. The Defendant has no opposition to this appointment in the event the Court determines the class should be certified. In appointing class

counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Mr. DeVore has already identified and investigated the potential claims in this action. He has handled prior class actions and prior matters involving complex litigation. In this action and others, he has satisfied the Court that he has knowledge of applicable law and the resources to commit to representing the class. Accordingly, the undersigned will respectfully recommend that Mr. DeVore be appointed class counsel should the recommendation to certify the class be adopted.

### B. Motion to Amend

The Plaintiffs have sought the alternative relief of amending their Complaint to attempt to join each affected police officer individually. For the reasons stated above, it appears that this action will proceed most efficiently as a class action. Accordingly, the Plaintiff's alternative Motion to Amend will be <u>denied</u>, albeit without prejudice to renew the motion should the Petition for Class Certification be denied.

### III. ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. The "Plaintiffs' Motion for Leave to Amend Complaint" (document #39) is **DENIED AS MOOT**, without prejudice to renew it if the proposed class is not ultimately certified.

2. The "Plaintiffs' Motion for Discovery Scheduling Conference with the Magistrate"

(document #38) is **DENIED** to the extent they seek a hearing. However, in light of the Court's recommendation, the deadlines in the Pretrial Order and Case Management Plan (document #9) are extended as follows to allow sufficient time for discovery:

- Discovery Completion: May 19, 2008
- Expert Reports:
  - Plaintiffs March 19, 2008
  - Defendant April 18, 2008
- Dispositive Motions June 19, 2008

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that both the "Plaintiffs' Petition for Class Certification" (document #14) and the "Plaintiffs' Petition for Appointment of Class Counsel" (document #15) be **GRANTED**,[5] and that Fred W. DeVore, III be so appointed.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed **within twenty (20) days** after service of same. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder</u>, 889 F.2d at 1365. Moreover, failure to file timely

---

[5]The undersigned notes that a second related lawsuit (<u>Anderson, et al. v. City of Gastonia</u>, 3:07CV510-W) was filed by several of the retired police officers who are members of the proposed class in the subject action on December 5, 2007. If this recommendation is approved, the Plaintiffs should voluntarily dismiss that action.

objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: December 28, 2007

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge